UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

| | |
|---|---|
| WILLIAM TOOMEY, MARY TOOMEY, CRESCENZO VIGLIOTTA, DIANE VIGLIOTTA, AARON LAMANQUE, LISA MOSCATO, and GINA GREEN, individually, | : Case No. 17 Civ. 2896 <br> : <br> : **COMPLAINT** <br> : |
| Plaintiffs, | : |
| - against - | : |
| | : |
| CATHOLIC CHARITIES OF THE DIOCESE OF ROCKVILLE CENTRE, | : |
| Defendant. | : |

-------------------------------------------------------------------------X

Plaintiffs William Toomey, Mary Toomey, Crescenzo Vigliotta, Diane Vigliotta, Aaron LaManque, Lisa Moscato, and Gina Green (collectively "Plaintiffs"), individually, by and through their attorneys Shulman Kessler LLP complaining of the Defendant Catholic Charities of the Diocese of Rockville Centre (referred to as "Defendant"), allege as follows:

## PRELIMINARY STATEMENT

1.     This lawsuit seeks to recover unpaid overtime and minimum wage compensation for Plaintiffs who been working for Defendant as Teaching Parents in Defendant's Teaching Family Homes in Long Island, New York.

2.     Defendant is a not-for-profit company, operating throughout the State of New York.

3.     Defendant, through its Teaching Family Homes Program, consisting of four homes in Long Island, New York, provides residential treatment for youths who suffer from serious emotional difficulties, from ages 5 through 17. Defendant employs a married couple as Teaching Parents at each of its Teaching Family Homes. The Teaching Parents are required to reside in Defendant's Teaching Family Home, sleep a minimum of 5 nights per week at the residence, and provide the resident youths with around-the-clock medical and emotional care and support in an

effort to assist resident youths in acquiring social and independent living skills to promote self-sufficiency and social connectedness. While Defendant's Teaching Family Homes are designed for its youths to reside there on a Monday through Friday basis, most of the youths live at the residence 7 days week with Plaintiffs.

4.       Defendant's Teaching Family Homes are subject to the FLSA overtime and minimum wage requirements, despite being a not-for-profit, because Defendant's Teaching Family Homes are an individual enterprise under the FLSA as they are primarily engaged in the care of the mentally ill who reside on the premise of such institution. *See* 29 U.S.C. § 203(r)(1)-2(A).

5.       In order for a youth to qualify for Defendant's Teaching Family Homes, he or she must be diagnosed as having a "mental health diagnosis" pursuant to the Diagnostic and Statistical Manual of Mental Disorders ("DSM"). Such mental health diagnosis include but are not limited to: schizophrenia and other psychotic disorders, cerebral palsy, autism, bi-polar disorder, pervasive developmental disorder, attention deficit disorder, opposition defiance disorder, enuresis, obsessive compulsive disorder, hoarding disorders, feeding and eating disorders, neurocognitive disorders, depressive disorders, and/or trauma and stressor related disorders,. Additionally, many of the youths that Plaintiffs care for have a dual diagnosis and have other behavioral or learning disabilities such as dyslexia, dyscalculia, and/or developmental coordination disorder. Thus, all of the residents in Defendant's Teaching Family Homes suffer from a mental illness.

6.       Defendant's Teaching Family Homes receives funding per youth admitted through the New York State Office of Mental Health ("OMH"), Medicaid, and through the Diocese of Rockville Centre.

7.     Defendant cannot receive funding from the OMH for a youth in its Teaching Family Homes unless the youth has been diagnosed with a mental health disorder pursuant to the DSM.

8.     Upon information and belief, the majority of funding for Defendant's Teaching Family Homes program is provide through OMH, which provides Defendant with approximately $20,000 per month, per youth admitted into its Teaching Family Homes program.

9.     Defendant also employs staff employees to assist Plaintiffs in their duties at the Teaching Family Homes during the workday; however, a Teaching Parent is required to be present at the Teaching Family Home with a staff employee at all times.  Defendant also has a difficult time employing staff at the Teaching Family Homes, leaving Plaintiffs with limited to no assistance during the week.  Additionally, staff do not sleep at the Teaching Family Homes.

10.    While employed by Defendant, Plaintiffs consistently worked over 40 hours per week without receiving premium overtime pay for all the hours they worked. Throughout the relevant period, it was Defendant's policy to deprive Plaintiffs of all of their earned overtime wages in violation of the Fair Labor Standards Act ("FLSA").  In order to avoid paying Plaintiffs overtime premiums for all of the hours Plaintiffs worked in excess of 40 per workweek, Defendant required its Teaching Parents to work "off-the-clock."

11.    While employed by Defendant, Defendant failed to provide Plaintiffs with a minimum wage for all hours worked over 40 hours per week. Throughout the relevant period, it was Defendant's policy to deprive Plaintiffs of any wages for hours worked in excess of 40 per workweek.  Defendant's policy is in violation of the FLSA and the New York Labor Law ("NYLL").

12.     Defendant tracked some of its Teaching Parents' days worked by occasionally having Plaintiffs complete some form of a schedule.  However, Defendant did not provide

3

Plaintiffs with information or training on how to complete its timesheets, resulting in timesheets typically being only initialed on days of the week worked per Defendant's schedule or 40 hours logged for total hours worked each week, regardless of the actual hours worked. Teaching Parents were not permitted to log all of their overtime hours worked per workweek, including overnight hours, consoling resident youths based on need, monthly meetings with Defendant, screenings, monthly treatment team meetings, staff meetings in Freeport, New York, OMH staff trainings, meetings at the school for the resident youths, meetings with the program nurse, meetings with a social worker, transporting resident youths to and from schools, special events that take place at the Teaching Family Homes, dinners for youth's parents once per month, counseling with youth, responding to and receiving telephone calls and text messages from parents and supervisors, crisis and emergency situations, assisting staff during the weekends and weekdays, and being on-call during all non-scheduled hours.

13.     On occasion, Defendant provided some Plaintiffs with differential pay in order to compensate Plaintiffs for a small portion of overtime hours worked, but this policy and practice was not consistent, and several Plaintiffs never received differential pay.

14.     Prior to the start and after the end of their scheduled hours, Teaching Parents typically worked "off-the-clock" for Defendant for approximately 60 to 70 hours throughout the week.

15.     Defendant was aware of its Teaching Parents' "off-the-clock" work because it was part of their job duties as Teaching Parents to be on-call and work throughout the week, regardless of Plaintiffs' scheduled hours to work. Additionally, Plaintiffs communicated to Defendant about their unpaid hours worked. In response, Defendant occasionally provided some Plaintiffs with "differential pay."

4

## JURISDICTION & VENUE

16. Jurisdiction of the Court over this controversy is based upon 29 U.S.C. § 201, *et seq.*, 28 U.S.C. §§ 1331 and 1337 and the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

17. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

18. Defendant does business in Nassau and Suffolk Counties and maintains a principal place of business at 90 Cherry Lane, Hicksville, New York 11801.

19. Accordingly, this action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391.

## THE PARTIES

*Plaintiffs*

*William Toomey*

20. William Toomey is a resident of the County of Suffolk, State of New York.

21. At all times relevant to this Complaint, William Toomey was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

22. At all times relevant, William Toomey has been employed by Defendant as a Teaching Parent.

23. William Toomey expressed his consent to make these claims against the Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b). (*See* Exhibit A).

*Mary Toomey*

24.     Mary Toomey is a resident of the County of Suffolk, State of New York.

25.     At all times relevant to this Complaint, Mary Toomey has been an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

26.     At all times relevant, Mary Toomey has been employed by Defendant as a Teaching Parent.

27.     Mary Toomey expressed her consent to make these claims against the Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit A).

*Crescenzo Vigliotta*

28.     Crescenzo Vigliotta is a resident of the County of Suffolk, State of New York.

29.     At all times relevant to this Complaint, Crescenzo Vigliotta was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

30.     At all times relevant, Crescenzo Vigliotta has been employed by Defendant as a Teaching Parent.

31.     Crescenzo Vigliotta expressed his consent to make these claims against the Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit A).

*Diane Vigliotta*

32.     Diane Vigliotta is a resident of the County of Suffolk, State of New York.

33.     At all times relevant to this Complaint, Diane Vigliotta has been an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

34.     At all times relevant, Diane Vigliotta has been employed by Defendant as a Teaching Parent.

35.     Diane Vigliotta expressed her consent to make these claims against the Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit A).

*Aaron LaManque*

36.     Aaron LaManque is a resident of the County of Suffolk, State of New York.

37.     At all times relevant to this Complaint, Aaron LaManque was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

38.     At all times relevant, Aaron LaManque has been employed by Defendant as a Teaching Parent.

39.     Aaron LaManque expressed his consent to make these claims against the Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit A).

*Lisa Moscato*

40.     Lisa Moscato is a resident of the County of Suffolk, State of New York.

41.     At all times relevant to this Complaint, Lisa Moscato has been an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

42.     At all times relevant, Lisa Moscato has been employed by Defendant as a Teaching Parent.

43.     Lisa Moscato expressed her consent to make these claims against the Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit A).

*Gina Green*

44.     Gina Green is a resident of the County of Suffolk, State of New York.

45.     At all times relevant to this Complaint, Gina Green has been an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and N.Y. Lab. Law § 190(2).

46.     At all times relevant, Gina Green has been employed by Defendant as a Teaching Parent.

47.     Gina Green expressed her consent to make these claims against the Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  (*See* Exhibit A).

### *Defendant Catholic Charities of the Diocese of Rockville Centre*

48.     Upon information and belief, Defendant was and still is a domestic not-for-profit corporation, authorized to do business pursuant to the laws of the State of New York.

49.     Upon information and belief, Defendant maintains control, oversight, and direction over its operations and employment practices.

50.     At all times hereinafter mentioned, Defendant was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

51.     At all times hereinafter mentioned, Defendant's Teaching Family Homes constitute an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

52.     At all times hereinafter mentioned, Defendant's Teaching Family Homes constitute a single enterprise pursuant to the FLSA.

53.     Defendant's Teaching Family Homes are an institution primarily engaged in the care of the mentally ill or defective who reside on Defendant's Teaching Family Homes premise within the meaning of Section 3(g) and (j) of the FLSA, 29 U.S.C. § 203(g), (r) & (s).

54.     Defendant's Teaching Family Homes engage in related activities within the meaning of Section 203(r)(1) of the FLSA and 29 C.F.R. 779.203.

55.     Defendant's Teaching Family Homes are a unified operation within the meaning of Section 203(r)(1) of the FLSA and 29 C.F.R. 779.203.

56.     Defendant's Teaching Family Homes are under common control within the meaning of Section 203(r)(1) of the FLSA and 29 C.F.R. 779.203.

57.     Defendant's Teaching Family Homes have for a common business purpose within the meaning of Section 203(r)(1) of the FLSA and 29 C.F.R. 779.203.

58.     Defendant's Teaching Family Homes constitute a single enterprise covered by the FLSA, and thus are subject to the FLSA minimum wage and overtime standards

59.     At all relevant times, Defendant maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

60.     Defendant's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## FACTUAL ALLEGATIONS

*William Toomey*

61.     William Toomey has been employed by Defendant from in or about 1994 through the present as a Teaching Parent.

62.     William Toomey has resided at Defendant's Teaching Parent Home located in Islip, New York, since in or about 1994.

63.     William Toomey has been an employee of Defendant, working under its direct supervision.

64.     At all times hereinafter mentioned, Defendant was required to pay William Toomey overtime pay at the statutory rate of 1 and ½ his regular rate of pay after he had worked 40 hours in a workweek.

65.     During most workweeks between in or about May 2011 and in or about the present, William Toomey typically worked between approximately 100 to 110 hours per week for Defendant.

66.     In addition to the 100 to 110 hours William Toomey typically worked, during two weeks in the month of November 2011, he worked an additional 16 hours per week because Defendant was short staffed.

67.     In addition to the approximate 100 to 110 hours William Toomey typically worked, during two weeks in the month of December 2011, he worked an additional 14 hours per week because Defendant was short staffed.

68.     In addition to the approximate 100 to 110 hours William Toomey typically worked, during two weeks in the month of January 2012, he worked an additional 20 hours per week because Defendant was short staffed.

69.     In addition to the approximate 100 to 110 hours William Toomey typically worked, during two weeks in the month of January 2013, he worked an additional 13 hours per week because Defendant was short staffed.

70.     In addition to the approximate 100 to 110 hours William Toomey typically worked, during the entire month of February 2013, he worked an additional 13 hours per week because Defendant was short staffed.

71.     In addition to the approximate 100 to 110 hours William Toomey typically worked, during the entire month of March 2013, he worked an additional 10.5 hours per week because Defendant was short staffed.

72. In addition to the approximate 100 to 110 hours William Toomey typically worked, during three weeks in the month of March 2015, he worked an additional 14, 9, and 6.75 hours each respective week because Defendant was short staffed.

73. In addition to the approximate 100 to 110 hours William Toomey typically worked, during the entire month of April 2015, he worked an additional 7.5 hours per week because Defendant was short staffed.

74. In addition to the approximate 100 to 110 hours William Toomey typically worked, during entire month of May 2015, he worked an additional 19.5, 12.5, 13, and 16 hours each respective week because Defendant was short staffed.

75. In addition to the approximate 100 to 110 hours William Toomey typically worked, for three weeks in the month of June 2015, he worked an additional 13, 12.5, and 16 hours each respective week because Defendant was short staffed.

76. In addition to the approximate 100 to 110 hours William Toomey typically worked, for two weeks in the month of July 2015, he worked an additional 13 and 4.5 hours each respective week because Defendant was short staffed.

77. In addition to the approximate 100 to 110 hours William Toomey typically worked, for one week in the month of July 2016, he worked an additional 6 hours because Defendant was short staffed.

78. Defendant failed to permit William Toomey to record any hours in excess of approximately 40 hours on his timesheets.

79. Defendant failed to compensate William Toomey for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times his regular hourly rate, throughout the entire term of his employment with Defendant.

11

80.	Defendant failed to compensate William Toomey with any wages for all hours worked in excess of 40 hours per week, throughout the entire term of his employment with Defendant.

81.	Defendant failed to furnish William Toomey with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

82.	Defendant failed to furnish William Toomey with an accurate wage notice.

83.	Upon information and belief, Defendant did not keep accurate records of hours worked by William Toomey.

**Mary Toomey**

84.	Mary Toomey has been employed by Defendant from in or about 1994 through the present as a Teaching Parent.

85.	Mary Toomey has resided at Defendant's Teaching Parent Home located in Islip, New York, since in or about 1994.

86.	Mary Toomey has been an employee of Defendant, working under its direct supervision.

87.	At all times hereinafter mentioned, Defendant was required to pay Mary Toomey overtime pay at the statutory rate of 1 and ½ her regular rate of pay after she had worked 40 hours in a workweek.

88.	During most workweeks between in or about May 2011 through the present, Mary Toomey typically works between 100 to 110 hours per week for Defendant.

89.	In addition to the 100 to 110 hours Mary Toomey typically worked per week, for a 6 week period from approximately January through February 2011, she worked an additional 40 hours per week because William Toomey was on medical leave and Defendant was short staffed.

90.    In addition to the 100 to 110 hours Mary Toomey typically worked, during two weeks in the month of November 2011, she worked an additional 16 hours per week because Defendant was short staffed.

91.    In addition to the approximate 100 to 110 hours Mary Toomey typically worked, during two weeks in the month of December 2011, she worked an additional 14 hours per week because Defendant was short staffed.

92.    In addition to the approximate 100 to 110 hours Mary Toomey typically worked, during two weeks in the month of January 2012, she worked an additional 20 hours per week because Defendant was short staffed.

93.    In addition to the 100 to 110 hours Mary Toomey typically worked per week, for a 7 week period from approximately September through October 2012, she worked an additional 40 hours per week because William Toomey was on medical leave and Defendant was short staffed.

94.    In addition to the approximate 100 to 110 hours Mary Toomey typically worked, during two weeks in the month of January 2013, she worked an additional 13 hours per week because Defendant was short staffed.

95.    In addition to the approximate 100 to 110 hours Mary Toomey typically worked, during the entire month of February 2013, she worked an additional 13 hours per week because Defendant was short staffed.

96.    In addition to the approximate 100 to 110 hours Mary Toomey typically worked, during the entire month of March 2013, she worked an additional 10.5 hours per week because Defendant was short staffed.

97.     In addition to the approximate 100 to 110 hours Mary Toomey typically worked, during three weeks in the month of March 2015, she worked an additional 14, 9, and 6.75 hours each respective week because Defendant was short staffed.

98.     In addition to the approximate 100 to 110 hours Mary Toomey typically worked, during the entire month of April 2015, she worked an additional 7.5 hours per week because Defendant was short staffed.

99.     In addition to the approximate 100 to 110 hours Mary Toomey typically worked, during entire month of May 2015, she worked an additional 19.5, 12.5, 13, and 16 hours each respective week because Defendant was short staffed.

100.     In addition to the approximate 100 to 110 hours Mary Toomey typically worked, for three weeks in the month of June 2015, she worked an additional 13, 12.5, and 16 hours each respective week because Defendant was short staffed.

101.     In addition to the approximate 100 to 110 hours Mary Toomey typically worked, for two weeks in the month of July 2015, she worked an additional 13 and 4.5 hours each respective week because Defendant was short staffed.

102.     In addition to the approximate 100 to 110 hours Mary Toomey typically worked, for one week in the month of April 2016, she worked an additional 24 hours because Defendant was short staffed.

103.     Defendant failed to permit Mary Toomey to record all the hours in excess of approximately 40 hours on her timesheets.

104.     Defendant failed to compensate Mary Toomey for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times her regular hourly rate, throughout the entire term of her employment with Defendant.

14

105. Defendant failed to compensate Mary Toomey with any wages for all hours worked in excess of 40 hours per week, throughout the entire term of her employment with Defendant.

106. Defendant failed to furnish Mary Toomey with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

107. Defendant failed to furnish Mary Toomey with an accurate wage notice.

108. Upon information and belief, Defendant did not keep accurate records of hours worked by Mary Toomey.

*Crescenzo Vigliotta*

109. Crescenzo Vigliotta has been employed by Defendant from in or about August 2014 through the present as a Teaching Parent.

110. Crescenzo Vigliotta has resided at Defendant's Teaching Parent Home located in Bethpage, New York, since in or about August 2014.

111. Crescenzo Vigliotta has been an employee of Defendant, working under its direct supervision.

112. At all times hereinafter mentioned, Defendant was required to pay overtime pay to Crescenzo Vigliotta at the statutory rate of 1 and ½ his regular rate of pay after he had worked 40 hours in a workweek.

113. During most workweeks between in or about August 2014 through the present, Crescenzo Vigliotta typically worked approximately 100 hours per week for Defendant.

114. Defendant failed to permit Crescenzo Vigliotta to record any hours in excess of approximately 40 hours on his timesheets.

115. Defendant failed to compensate Crescenzo Vigliotta for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times his regular hourly rate, throughout the entire term of his employment with Defendant.

116. Defendant failed to compensate Crescenzo Vigliotta with any wages for all hours worked in excess of 40 hours per week, throughout the entire term of his employment with Defendant.

117. Defendant failed to furnish Crescenzo Vigliotta with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

118. Defendant failed to furnish Crescenzo Vigliotta with an accurate wage notice.

119. Upon information and belief, Defendant did not keep accurate records of hours worked by Crescenzo Vigliotta.

*Diane Vigliotta*

120. Diane Vigliotta has been employed by Defendant from in or about August 2014 through the present as a Teaching Parent.

121. Diane Vigliotta has resided at Defendant's Teaching Parent Home located in Bethpage, New York, since in or about August 2014.

122. Diane Vigliotta has been an employee of Defendant, working under its direct supervision.

123. At all times hereinafter mentioned, Defendant was required to pay overtime pay to Diane Vigliotta at the statutory rate of 1 and ½ her regular rate of pay after she had worked 40 hours in a workweek.

124. During most workweeks between in or about August 2014 through the present, Diane Vigliotta typically worked approximately 100 hours per week for Defendant.

125.     Defendant failed to permit Diane Vigliotta to record all the hours in excess of approximately 40 hours on her timesheets.

126.     Defendant failed to compensate Diane Vigliotta for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times her regular hourly rate, throughout the entire term of her employment with Defendant.

127.     Defendant failed to compensate Diane Vigliotta with any wages for all hours worked in excess of 40 hours per week, throughout the entire term of her employment with Defendant.

128.     Defendant failed to furnish Diane Vigliotta with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

129.     Defendant failed to furnish Diane Vigliotta with an accurate wage notice.

130.     Upon information and belief, Defendant did not keep accurate records of hours worked by Diane Vigliotta.

*Aaron LaManque*

131.     Aaron LaManque has been employed by Defendant from in or about May 2011 through the present as a Teaching Parent.

132.     Aaron LaManque has resided at Defendant's Teaching Parent Home located in Manorville, New York, since in or about May 2011.

133.     Aaron LaManque has been an employee of Defendant, working under its direct supervision.

134.     At all times hereinafter mentioned, Defendant was required to pay Aaron LaManque overtime pay at the statutory rate of 1 and ½ his regular rate of pay after he had worked 40 hours in a workweek.

135.    During most workweeks between in or about May 2011 through the present, Aaron LaManque typically worked approximately 100 hours per week for Defendant.

136.    Defendant failed to permit Aaron LaManque to record any hours in excess of approximately 40 hours on his timesheets.

137.    Defendant failed to compensate Aaron LaManque for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times his regular hourly rate, throughout the entire term of his employment with Defendant.

138.    Defendant failed to compensate Aaron LaManque with any wages for all hours worked in excess of 40 hours per week, throughout the entire term of his employment with Defendant.

139.    Defendant failed to furnish Aaron LaManque with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

140.    Defendant failed to furnish Aaron LaManque with an accurate wage notice.

141.    Upon information and belief, Defendant did not keep accurate records of hours worked by Aaron LaManque.

*Lisa Moscato*

142.    Lisa Moscato has been employed by Defendant from in or about May 2011 through the present as a Teaching Parent.

143.    Lisa LaManque has resided at Defendant's Teaching Parent Home located in Manorville, New York, since in or about May 2011.

144.    Lisa Moscato has been an employee of Defendant, working under its direct supervision.

145. At all times hereinafter mentioned, Defendant was required to pay Lisa Moscato overtime pay at the statutory rate of 1 and ½ her regular rate of pay after she had worked 40 hours in a workweek.

146. During most workweeks between in or about May 2011 through the present, Lisa Moscato typically worked approximately 100 hours per week for Defendant.

147. Defendant failed to permit Lisa Moscato to record all the hours in excess of approximately 40 hours on her timesheets.

148. Defendant failed to compensate Lisa Moscato for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times her regular hourly rate, throughout the entire term of her employment with Defendant.

149. Defendant failed to compensate Lisa Moscato with any wages for all hours worked in excess of 40 hours per week, throughout the entire term of her employment with Defendant.

150. Defendant failed to furnish Lisa Moscato with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

151. Defendant failed to furnish Lisa Moscato with an accurate wage notice.

152. Upon information and belief, Defendant did not keep accurate records of hours worked by Lisa Moscato.

*Gina Green*

153. Gina Green has been employed by Defendant from in or about August 2004 through the present as a Teaching Parent.

154. Gina Green has resided at Defendant's Teaching Parent Home located in Plainview, New York, since in or about August 2004.

19

155.     Gina Green has been an employee of Defendant, working under its direct supervision.

156.     At all times hereinafter mentioned, Gina Green was required to be paid overtime pay at the statutory rate of 1 and ½ her regular rate of pay after she had worked 40 hours in a workweek.

157.     During most workweeks between in or about May 2011 through the present, Gina Green typically worked between 100 to 110 hours per week for Defendant.

158.     Defendant failed to permit Gina Green to record all the hours in excess of approximately 40 hours on her timesheets.

159.     Defendant failed to compensate Gina Green for all of the time worked in excess of 40 hours per week at a rate of at least 1 and ½ times her regular hourly rate, throughout the entire term of her employment with Defendant.

160.     Defendant failed to compensate Gina Green with any wages for all hours worked in excess of 40 hours per week, throughout the entire term of her employment with Defendant.

161.     Defendant failed to furnish Gina Green with an accurate statement of wages listing hours worked, rates paid, gross wages, allowances and deductions taken, and net wages paid.

162.     Defendant failed to furnish Gina Green with an accurate wage notice.

163.     Upon information and belief, Defendant did not keep accurate records of hours worked by Gina Green.

## PLAINTIFFS' COMMON FACTUAL ALLEGATIONS

164.    Plaintiffs are required to address all mental, emotional, and physical needs of their resident youths as part of their job duties for Defendant.  This includes, but is not limited to, implementing individualized treatment plans including medication administration and behavior modification techniques, daily interaction with resident youth, providing a stable and healthy home environment at all times for all resident youth, being emotionally and physically available to resident youths at all times, responding to emergencies at school, establishing structured household routines, disciplining resident youths, attending meetings with Defendant's nurse and social worker with regard to each resident youths in their care, providing transportation to resident youths when needed, assisting resident youths with homework, buying groceries, maintaining a household budget and compliance reports, handling school correspondence for each resident youth, completing progress notes, preparing meals, and cleaning Defendant's Teaching Family Home.

165.    Throughout Plaintiffs' employment, Defendant requires Plaintiffs reside at Defendant's Teaching Family Homes.

166.    Throughout Plaintiffs' employment, Defendant requires Plaintiffs be on-call to for the care and safety of the resident youths on a 24 hours a day, 7 day a week basis.

167.    Throughout Plaintiffs' employment, Defendant does not permit Plaintiffs to consume alcohol when they were on-call.

168.    Throughout Plaintiffs' employment, Defendant has failed to compensate Plaintiffs for their on-call time.

169.    Throughout Plaintiffs' employment, Plaintiffs are regularly awoken by resident youths in the middle of the night, and are required to assist resident youths with issues ranging

from screaming outbursts, bed wetting, crying, and nightmares.

170.    Throughout Plaintiffs' employment, Defendant has failed to compensate Plaintiffs for their sleep time.

171.    Defendant did not enter into a sleep agreement with Plaintiffs.

172.    Throughout Plaintiffs' employment, Defendant has required Plaintiffs attend bi-monthly meetings with a social worker in their Teaching Family Home. These meetings typically last 2 hours each, and are scheduled outside Plaintiff's regularly scheduled hours.

173.    Defendant does not compensate Plaintiffs for their time spent at the mandatory bi-monthly meetings with a social worker.

174.    Throughout Plaintiffs' employment, Defendant requires Plaintiffs attend monthly dinners with the resident youths' parents. These dinners typically last 3 hours each, and are scheduled outside of Plaintiffs' regularly scheduled hours.

175.    Defendant does not compensate Plaintiffs for attending mandatory monthly dinners with resident youths' parents.

176.    Throughout Plaintiffs' employment, Defendant requires Plaintiffs attend bi-monthly meetings with the resident youths' nurse. These meetings typically last approximately 4 hours each, and are scheduled outside of Plaintiffs' regularly scheduled hours.

177.    Defendant does not compensate Plaintiffs for attending these mandatory bi-monthly meetings with the resident youths' nurse.

178.    Throughout Plaintiffs' employment, Defendant requires Plaintiffs answer and respond to telephone calls and text messages from resident youths' parents and their supervisors, which Plaintiffs receive at all hours of the day, 7 days per week.

179.    Throughout Plaintiffs' employment, Plaintiffs typically spend approximately 30 minutes each week receiving and responding to telephone calls and text messages from resident youths' parents and their supervisors.

180.    Defendant does not compensate Plaintiffs for their time spent receiving and responding to telephone calls and text messages from resident youths' parents and their supervisors.

181.    Throughout Plaintiffs' employment, Defendant requires Plaintiffs attend monthly team meetings that lasted approximately 2 hours.

182.    Defendant does not compensate Plaintiffs for their time spent attending the monthly team meetings.

183.    Throughout Plaintiffs' employment, Defendant requires Plaintiffs attend OMH staff training meetings that last approximately 8 hours and occur once every three to four months.

184.    Defendant did not compensate Plaintiffs for their time spent attending the mandatory OMH staff training meetings.

# FIRST CAUSE OF ACTION
## FLSA – Overtime Wages

185. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

186. Plaintiffs are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

187. At all relevant times, Plaintiffs and Defendant were engaged in commerce within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

188. Defendant employed Plaintiffs for workweeks longer than 40 hours and willfully failed to compensate Plaintiffs for all of the time worked in excess of 40 hours per week, including on-call and sleep time hours, at a rate of at least 1 and ½ times their regular hourly rate, in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a)(1).

189. Plaintiffs have expressed their consent to make these claims against Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).

190. Defendant failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the FLSA Collective.

191. Because Defendant's violations of the FLSA were willful, a 3 year statute of limitations applies, pursuant to 29 U.S.C. § 255.

192. As a consequence of the willful underpayment of wages, alleged above, Plaintiffs have incurred damages thereby and Defendant is indebted to them in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### FLSA – Failure to Pay Minimum Wage

193.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

194.     At all relevant times, Plaintiffs were Defendant's employees within the meaning of 29 U.S.C. § 203(e)(1).

195.     At all relevant times, Defendant was Plaintiffs' employer within the meaning of 29 U.S.C. § 203(d).

196.     At all relevant times, Plaintiffs and Defendant were engaged in commerce within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

197.     At all times hereinafter mentioned, Defendant's Teaching Family Homes constitute an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

198.     At all relevant times, the applicable federal minimum wage is codified by 29 U.S.C. § 206(a)(1).

199.     Defendant willfully failed to pay Plaintiffs their minimum wages for all hours worked in excess of 40 per week, including on-call hours and sleep time hours, in violation of FLSA, 29 U.S.C. § 206(a).

200.     As a consequence of the willful underpayment of wages, alleged above, Plaintiffs have incurred damages thereby and Defendant is indebted to them in the amount of the unpaid minimum wage compensation, together with interest and liquidated damages, in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**NYLL – Failure to Pay Minimum Wage**

201.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

202.    At all times relevant to this action, the state minimum wage was $7.25 per hour on and after July 24, 2009; $8.00 per hour on and after December 31, 2013; $8.75 per hour on and after December 31, 2014; $9.00 per hour on and after December 31, 2015; and $10.00 per hour on and after December 31, 2016, as codified by N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 142-2.1.

203.    Defendant willfully violated Plaintiffs' rights by failing to pay Plaintiffs a minimum wage for all hours of work performed in excess of 40 each week, in violation of N.Y. Lab. Law § 650 *et seq.*

204.    Due to Defendant's NYLL violations, Plaintiffs are entitled to recover from Defendant their unpaid regular wages, liquidated damages, reasonable attorneys' fees, and costs of this action pursuant to N.Y. Lab. Law § 663(1).

## FOURTH CAUSE OF ACTION
### NYLL – Notice and Record-Keeping Requirement Violation

205.     Plaintiffs reallege and incorporate by reference herein all allegations in all preceding paragraphs.

206.     Defendant failed to supply Plaintiffs a wage notice as required by N.Y. Lab. Law § 195, in English or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with N.Y. Lab. Law § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

207.     Defendant failed to supply Plaintiffs with an accurate statement of wages as required by N.Y. Lab. Law § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

208.     Due to Defendant's violations of N.Y. Lab. Law § 195, Plaintiffs are each entitled to damages of $50 for each workweek that Defendant failed to provide a wage notice, or a total of $2,500 per class member, and damages of $100 for each workweek that Defendant failed to

provide accurate wage statements, or a total of $2,500 per class member, as provided for by N.Y. Lab. Law § 198, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek the following relief:

A.      Unpaid overtime pay and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

B.      Unpaid minimum wages and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

C.      Unpaid minimum wages and liquidated damages permitted by law pursuant to the NYLL;

D.      Statutory damages, as provided for by N.Y. Lab. Law § 198, for Defendant's violations of the notice and recordkeeping requirements pursuant to N.Y. Lab. Law § 195;

E.      Pre-judgment interest and post-judgment interest as provided by law;

F.      Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendant from continuing its unlawful practices;

G.      Attorneys' fees and costs of the action;

H.      Issuance of a declaratory judgment that the practices complained of in this action are unlawful under N.Y. Lab. Law § 190 *et seq.*;

I.      An injunction requiring Defendant to cease the unlawful activity described herein pursuant to N.Y. Lab. Law § 190 *et seq.*;

J.      Such other relief as this Court shall deem just and proper.

Dated: Melville, New York
       May 11, 2017

Respectfully submitted,

By:    */s/ Marijana Matura*
          Marijana Matura

**SHULMAN KESSLER LLP**
Troy L. Kessler
Marijana Matura
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100

*Attorneys for Plaintiffs*